UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DESIREE SANDERS, | Civil Action No.: 19-13280 |
| | Honorable Matthew F. Leitman |
| Plaintiff, | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| ANDREW SAUL,<br>COMMISSIONER OF<br>SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 12, 15]**

Plaintiff Desiree Sanders appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for supplemental security income (SSI) and disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- Sanders' motion [ECF No. 12] be **DENIED**;

- the Commissioner's motion [ECF No. 15] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Background and Disability Applications

Sanders was born in December 1971, making her 43 years old at the time of her alleged onset date in June 2015. [ECF No. 10-5, PageID.185; ECF No. 10-7, PageID.277, 279]. She has past work as a housekeeping cleaner, retail stock person, cashier, and retail assistant manager. [ECF No. 10-2, PageID.67; ECF No. 10-5, PageID.197-198]. Sanders alleged disability because of back muscle spasms, lower back pain, spinal pain, depression, shoulder pain and burning, migraines, agoraphobia, and anxiety. [ECF No. 10-5, PageID.171].

After the Commissioner denied her applications initially, Sanders requested a hearing, which took place in May 2018 and during which she and a vocational expert (VE) testified. [ECF No. 10-4, PageID.126-168]. In an October 2018 written decision, the ALJ found Sanders not disabled. [ECF No. 10-2, PageID.58-75]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Sanders timely filed for judicial review. [*Id.*, PageID.47-49; ECF No. 1].

## B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC,

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Sanders was not disabled. At the first step, he found that Sanders had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 10-2, PageID.64]. At the second step, the ALJ found that Sanders had the severe impairments of "obesity, hypertension, affective disorder, anxiety disorder, disc bulging and facet hypertrophy with mild foraminal stenosis at multiple levels of the lumbar spine, sacroiliitis with LS nerve root irritation, foraminal stenosis of the cervical spine, diabetes mellitus type 2, hypertension retinopathy minor, cataracts, refractive amblyopia, and carpal tunnel syndrome." [*Id*.]. The ALJ also determined that Sanders had the non-severe impairments of gastroesophageal reflux disease and migraines. [*Id.*]. And the ALJ found that Sanders' alleged impairments of radiculopathy, spondylosis of the cervical and lumbar spine, and post-traumatic stress disorder (PTSD) did not "rise to the level of medically determinable impairments due to a lack of objective evidence." [*Id*.]. Next,

4

the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, PageID.64-65].

Between the third and fourth steps, the ALJ found that Sanders had the RFC to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she

> should not climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs. She can frequently stoop, kneel, crouch, or crawl. She cannot work around unprotected heights or moving mechanical parts. She can frequently finger and handle objects with her bilateral upper extremities. She can perform simple and routine tasks, but not at a production rate pace (e.g. assembly line work). She can occasionally interact with supervisors, coworkers, and the public. However, she should not engage in tandem tasks with coworkers. She can avoid normal workplace hazards and read book/newspaper sized print.

[ECF No. 10-2, PageID.66]. At the fourth step, the ALJ concluded that Sanders could perform her past relevant work as a housekeeping cleaner. [*Id.*, PageID.73]. And at the final step, the ALJ considered Sander's age, education, work experience, RFC, and the testimony of the VE, and found that she could perform other jobs that existed in significant numbers in the national economy, including office helper, production inspector, and production sorter. [*Id.*, PageID.73-74].

5

## II. ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Sanders contends that the ALJ's decision is not supported by substantial evidence because he failed to properly weigh the opinion evidence and develop the record. [ECF No. 12]. The Court disagrees and recommends that the ALJ's decision be affirmed.

### B.

Sanders contends that the ALJ erred by not giving controlling weight to her treating physician Sachin Nagarkar, M.D., and did not weigh the

6

opinion of the state agency psychological consultant. [ECF No. 12, PageID.1079-1087].

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723.

An ALJ who gives less than controlling weight to a treating physician's opinion must provide "good reasons" for doing so to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard permits "meaningful appellate review" and ensures that claimants "understand the disposition of their cases." *Id.* at 242-43 (internal quotation marks and citation omitted). But "[t]he ALJ need not

7

perform an exhaustive, step-by-step analysis of each factor." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019).  The ALJ can satisfy the good reason "requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 352 (6th Cir. 2020) (citation and internal quotation marks omitted).

### 1.  Dr. Nagarkar

Dr. Nagarkar provided three opinions—October 2016, November 2016, and March 2018.  [ECF No. 10-11, PageID.518-521; ECF No. 10-23, PageID.1045-1047].  In the one-page October 2016 form report, Dr. Nagarkar stated that Sanders did not require medical assistance with any of her personal care activities, and that she was unable to "work at usual occupation" and "work at any job" for 12 months.  [ECF No. 10-11, PageID.518].  Dr. Nagarkar did not provide any explanation or supporting evidence.

In November 2016, Dr. Nagarkar wrote that Sanders had the ability to deal with the public, deal with work related stress, and maintain attention/concentration.  [*Id.*, PageID.520].  She also said that Sanders was unable to understand, remember, and carry out complex, not complex, or

8

simple job instructions because her "thought organization, memory, and comprehension [were] impaired"; unable to behave in an emotionally stable manner, relate predictably in a social manner, and demonstrate reliability because of "depressive episodes"; and "unable to be around other employees or supervisors." [*Id.*]. Dr. Nagarkar further stated that she expected Sanders to be absent from work "4 or more" times per month and was incapable of sustained work on a continued basis because she "cannot leave the house most of the time." [*Id.*, PageID.521].

In a second work-related activities report from March 2018, Dr. Nagarkar stated Sanders cannot relate to coworkers, deal with the public, interact with supervisors, deal with work related stress, and maintain attention/pace. [ECF No. 10-23, PageID.1046]. She again stated that Sanders was unable to "understand, remember, and carry out complex, not complex, or simple job instructions" because of her "inability to have organized thoughts, mental state affects memory loss and comprehension." [*Id.*]. Dr. Nagarkar found that Sanders was "not emotionally stable"; could not relate predictably in a social manner because her "moods switch up unpredictabl[y]"; and could not demonstrate reliability due to her inability to "at times" leave her home or attend appointments. [*Id.*]. Dr. Nagarkar determined that Sanders was unable to make work-related decisions,

9

respond appropriately to usual work situations, deal with work-routine changes, and respond appropriately to supervisors and co-workers. [*Id.*]. She concluded the report by stating, "Client has not been stable since the beginning of treatment, different medications have been tried. Moods and emotions continue to be unpredictable." [*Id.*, PageID.1047]. Sanders was diagnosed with mixed episode bipolar disorder, agoraphobia with panic disorder, severe major depressive disorder, and generalized anxiety disorder. [*Id.*]

The ALJ thoroughly discussed Sanders' medical history and records, including the opinions by Dr. Nagarkar. The ALJ found that the first opinion from October 2016 was not entitled any special significant weight because the statement was an "administrative finding dipositive of a case, which is reserved to the Commissioner." [ECF No. 10-2, PageID.72, citing 20 C.F.R. §§ 404.1527(e)(1)(3) and 416.927(e)(1)(3)]. As for the November 2016 opinion, the ALJ gave it limited weight because "Dr. Nagarkar provided little-to-no narrative support," based it on "relatively minimal and conservative" mental health treatment history and had only treated Sanders for six months. [*Id.*].

The ALJ gave some weight to Dr. Nagarkar's March 2018 opinion, finding that it was not entirely consistent with the record. The ALJ found

10

that although Sanders was limited in her ability to interact with others, Dr. Nagarkar's finding that she was "completely unable to engage with coworkers, supervisors, or the public" was undercut by the record evidence which stated her interactions with physicians was "always described as appropriate." [*Id.*]. The ALJ also found that Dr. Nagarkar's opinion that Sanders would be absent from work at least four times per month was undermined by the fact she was "consistently and routinely able to attend her medical appointments." [*Id.*]. Lastly, The ALJ concluded that Sanders' "metal health examinations throughout the record does not support that she is unable to [concentrate and engage in organized thoughts] entirely." [*Id.*].

The ALJ also indirectly attacked the supportability of Dr. Nagarkar's opinions with other evidence in the record. *Stewart*, 811 F. App'x at 352. Here, the ALJ described Sanders' mental health treatment records that spanned from mid-2016 to late-2017. In May 2016, the intake therapist described Sanders as "well-groomed with good personal care habits and a stable living environment." [ECF No. 10-2, PageID.70; ECF No. 10-11, PageID.497]. Sanders' affect was appropriate, she had a calm and cooperative attitude, and her judgment, memory, and insight were intact. [ECF No. 10-2, PageID.70; ECF No. 10-11, PageID.497-498]. Sander's

11


reported slight improvements from the prescribed medications and therapy in August 2016.  [ECF No. 10-2, PageID.70; ECF No. 10-11, PageID.502].

The state agency psychiatric consultant Donovan Royal, Psy.D., L.P., whose opinion Sanders states was correctly weighed, found that she was "able to present her thoughts and feelings in a spontaneous and continuous manner that was fairly organized and produced rational and logical responses to the questions asked of her."  [ECF No. 10-2, PageID.70; ECF No. 10-11, PageID.512].  Dr. Royal also said that Sanders' speech was clear and normal with "appropriate rate, rhythm, and intonation," she was "oriented times three," and could repeat five digits forward and backward and "recalled three of three objects after three minutes."  [ECF No. 10-11, PageID.512].

The ALJ also addressed Dr Sanders' agoraphobia diagnosis.  Although the ALJ found that Sanders' mental impairments limited her ability to engage in work activities, he determined that the record did not support her allegations of being unable to leave the house.  [ECF No. 10-2, PageID.71].  The ALJ noted that she reported some good days and some bad days, and in October 2017, Sanders stated that things were going "ok" and she was "feeling a little less paranoid."  [*Id.*; ECF No. 10-17, PageID.813, 816, 819].  The ALJ also noted that Sanders' allegation of

being unable to leave the house was undermined by her frequent attendance at medical appointments and her plans to "fly to Texas for her daughter's graduation." [ECF No. 10-2, PageID.71; ECF No. 10-17, PageID.791].

And contrary to Sanders' contention, the ALJ did not have to defer to Dr. Nagarkar's assertions that she was unable to work and "would miss work four or more days per month." [ECF No. 12, PageID.1082, citing ECF No. 10-23, PageID.1047]. These sorts of determinations made by Dr. Nagarkar do not constitute a medical opinion. *Kolar v. Comm'r of Soc. Sec.*, No. 1:14–cv–503, 2015 WL 5589265, at *6 (W.D. Mich. Sept. 4, 2015) (a doctor's "predictions of how often plaintiff would likely miss work [is] conjecture, not a medical opinion"); *Ault v. Comm'r of Soc. Sec.*, 2016 WL 1621756, at *5 (W.D. Mich. Apr. 25, 2016) ("The doctor's opinions regarding how often Plaintiff would miss work or be off task were not entitled to controlling weight. They are conjectures, not a medical opinion."). To be a "medical opinion" entitled to deference under the treating physician rule, Dr. Nagarkar had to describe what Sanders could do despite her impairments and specify her physical or mental restrictions. *Sulaka v. Comm'r of Soc. Sec.*, No. CV 16-13800, 2017 WL 8682368, at *4

(E.D. Mich. Sept. 29, 2017), *adopted*, 2018 WL 797591 (E.D. Mich. Feb. 9, 2018) (citing 20 C.F.R. § 404.1527(a)(1)).

The Court finds that the ALJ satisfied the "good reason" requirement for giving less than controlling weight to Dr. Nagarkar's opinions.  The "good reasons" rule required the ALJ to explain his reasoning for discounting the weight given to the treating physician's opinion, but it does not permit this Court to reweigh the evidence.  *Barnard v. Berryhill*, No. 1:17-CV-02575, 2019 WL 1242856, at *8 (N.D. Ohio Mar. 18, 2019).  The ALJ explained his reasoning, and Sanders' claim of error should be rejected.

### 2.  *State Agency Consultant*

Sanders' also contends that the ALJ's determination is not supported by substantial evidence because the ALJ "did not weigh the opinion of the state agency psychological consultant."  [ECF No. 12, PageID.1079-1080].  She argues that the ALJ's error was "compounded" "by failing to weigh or even mention" the state agency psychological consultant's findings that she "would have difficulty completing tasks due to her concentration limitations, and she could only perform one and two step tasks."  [*Id.*, PageID.1086, citing ECF No. 10-5, PageID.196].

The opinions of consultative examiners warrant no particular weight under the regulations. 20 C.F.R. § 416.927(c)(2). Rather, an opinion of a consulting examiner is afforded weight according to the factors set forth in 20 C.F.R. § 416.917, including whether it is supported by objective findings, consistent with the whole record, and the extent of the physician's relationship to the claimant. And an ALJ need not explain his reasons for discounting a consulting examiner's opinion. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[T]he SSA requires ALJ's to give reasons for only treating sources").

The Court also notes that the regulations do not require an ALJ to discuss "every piece of evidence submitted by a party" or address every detail of the medical opinions. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006). And any error in weighing the opinion of the state agency consultant would be found harmless because Sanders has failed to show how such an error prejudiced her. *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 858-60 (E.D. Mich. 2012).

## C.

Sanders lastly contends that the ALJ "failed to fulfill his duty to develop the record, as the record lacks the opinion of a medical professional regarding Plaintiff's physical impairments." [ECF No. 12,

PageID.1087-1092]. Sanders' argues that the lack of a medical opinion about her physical impairments shows that the ALJ's "decision fails to provide an accurate and logical bridge between the evidence and the result." [*Id.*, PageID.1088 (citing *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828-29 (E.D. Mich. 2017)]. The Court notes that Sanders does not argue that she meets a listing or that she requires a more restrictive RFC; she argues only that the ALJ should have obtained a medical opinion before making an RFC finding.

The Commissioner counters that ALJs are under no such duty because Sanders was represented by counsel at the hearing. [ECF No. 15, PageID.1121-1122]. The Court agrees. As a general rule, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). *See Culp v. Comm'r*, 529 F. App'x 750, 751 (6th Cir. 2013) ("[T]he ALJ did not have a special duty to develop the record because Culp was represented by counsel."). The ALJ was not required to "seek out a physician's medical opinion where one [was] not offered." *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Besides, "[n]o bright-line rule exists in our circuit

16

directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019).

The Court finds no error here.

### III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Sanders' motion for summary judgment be [ECF No. 12] be **DENIED**; that the Commissioner's motion [ECF No. 15] be **GRANTED**; and that the ALJ's decision be **AFFIRMED**.

Dated: February 19, 2021

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are

preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 19, 2021.

<div style="text-align: right;">
s/Karri Sandusky on behalf of<br>
MARLENA WILLIAMS<br>
Case Manager
</div>