UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESIREE SANDERS,

      Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

Case No. 19-cv-13280
Hon. Matthew F. Leitman

_____/

**ORDER (1) SUSTAINING IN PART PLAINTIFF'S OBJECTIONS (ECF No. 18) TO REPORT AND RECOMMENDATION (ECF No. 17); (2) GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12); AND (3) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15)**

In this action, Plaintiff Desiree Sanders challenges the denial of her applications for supplemental security income and disability insurance benefits under the Social Security Act. (*See* Compl., ECF No. 1.)  Both Sanders and Defendant Commissioner of Social Security filed motions for summary judgment. (*See* Mots., ECF Nos. 12, 15.)  The assigned Magistrate Judge has issued a Report and Recommendation in which she recommended that the Court deny Sanders' motion and grant the Commissioner's motion (the "R&R"). (*See* R&R, ECF No. 17.)

Sanders has now filed timely objections to the R&R (the "Objections"). (*See* Objections, ECF No. 18.)  Among other things, Sanders insists that the assigned

1

Administrative Law Judge did not assign sufficient weight to the opinions of her treating psychiatrist, Dr. Sachin Nagarkar. The Court agrees. Therefore, for the reasons explained below, the Court **SUSTAINS** Sanders' Objections in part and **REMANDS** this action for further administrative proceedings consistent with this order.

## I

## A

On February 24, 2016, Sanders applied for disability insurance benefits under the Social Security Act. (*See* ECF No. 10-2, PageID.61.) She also applied for supplemental security income under the Social Security Act. (*See id.*) Sanders said that she was disabled and entitled to benefits due to, among other things, back and spinal pain, migraines, depression, anxiety, and a fear of "being in public." (ECF No. 10-5, PageID.170-171.) The Social Security Administration denied her applications on September 9, 2016. (*See id.*, PageID.200-201.)

After the Social Security Administration denied Sanders' applications, she sought a hearing on that decision before an Administrative Law Judge (the "ALJ"). Sanders testified at that hearing. (*See* ALJ Hr'g Tr., ECF No. 10-4, PageID.128-168.) Relevant here, Sanders testified that:

- She was "paranoid," "scared all the time," and "can't be around people." (*Id.*, PageID.138);

2

- She gets her mail at "3:00 in the morning … [b]ecause [she does not] want to see [her] neighbors" and only wants to leave her home when "there won't be [anybody] outside." (*Id.*, PageID.139);

- She has two dogs who she walks early in the morning "when there ain't nobody else out." (*Id.*; PageID.149); and

- She's "always crying [and] sad." (*Id.*, PageID.141).

In addition to testifying at the hearing, Sanders also presented treatment records and assessments from her treating physicians to the ALJ. Relevant to her Objections, Sanders presented two "Mental Assessment" forms completed by her treating psychiatrist Dr. Nagarkar. Dr. Nagarkar's first assessment was written in November 2016 (the "November 2016 Assessment"). (*See* November 2016 Assessment, ECF No. 10-11, PageID.520-521.) In the November 2016 Assessment, Dr. Nagarkar wrote that Sanders' "emotional stability has changed over this year and a half," and she said that this change rendered Sanders "unable to be reliable due to depressive episodes." (*Id.*, PageID.520.) Dr. Nagarkar further stated that Sanders was "unable to be around other employees or supervisors" due to her "high anxiety, irritability, and depression." (*Id.*) Finally, Dr. Nagarkar opined that Sanders was "not stable" and was unable to work because she "cannot leave the house most of the time." (*Id.*, PageID.521.) Dr. Nagarkar said that due to Sanders' "impairments"

Sanders would be "expect[ed]" to be absent from work at least four days per month. (*Id.*)

Dr. Nagarkar provided a second mental assessment in March 2018 (the "March 2018 Assessment").   (*See* March 2018 Assessment, ECF No. 10-23, PageID.1046-1047.)   In the March 2018 Assessment, Dr. Nagarkar wrote that Sanders suffered from bipolar disorder, agoraphobia with panic disorder, major depressive disorder (severe), and generalized anxiety disorder. (*See id.*, PageID.1047.)  Dr. Nagarkar believed that because of these conditions, Sanders did "not have the ability to relate to coworkers, deal with the public or interact with supervisors." (*Id.*, PageID.1046.)   Among other things, Dr. Nagarkar noted that Sanders:

- "Can't deal with work related stress";

- "At times [is] unable to leave her house or go to appointments";

- Could not "respond appropriately with coworkers" or supervisors because of "mood swings" and "unpredictable emotions and behavior"; and

- Has "not been stable since the beginning of treatment.   Different medications have been tried.   Moods and emotions continue to be unpredictable."

(*Id.*., PageID.1046-1047.)  Dr. Nagakar again believed that these impairments would cause Sanders to be absent from work at least four days per month. (*See id.*, PageID.1047.)

**B**

The ALJ issued a written decision denying Sanders' applications for benefits on October 5, 2018. (*See* ALJ Decision, ECF No. 10-2, PageID.61-75.)  The ALJ first determined that Sanders suffered from several severe impairments, including "affective disorder" and "anxiety disorder." (*Id.*, PageID.64.)  He then determined that she had the residual functional capacity ("RFC") to perform "light work" with certain restrictions. (*Id.*, PageID.66.)  These restrictions included having only "occasional[] interact[ion] with supervisors, coworkers, and the public" and not "engag[ing] in tandem tasks with coworkers." (*Id.*)

In reaching this RFC, the ALJ considered the two assessments from Dr. Nagakar described above.  With respect to the November 2016 Assessment, the ALJ provided that assessment "limited weight." (*Id.*, PageID.72.)  He explained his reasoning behind that decision in a single sentence: "Dr. Nagakar provided little-to-no narrative support, based [her opinions] on [a] relatively minimal and conservative treatment history for [Sanders'] mental impairments, and [she] had been seeing [Sanders] for 6 months." (*Id.*)  The ALJ provided "some weight" to Dr. Nagakar's March 2018 Assessment. (*Id.*)  He explained that:

5

> In the [March 2018 Assessment], Dr. Nagarkar did expand on the reasoning for her opinions, and the undersigned gives this opinion some weight.   While [Sanders'] interactions with her physicians, which were always described as appropriate, do not support that she is completely unable to engage with coworkers, supervisors, or the public, the record does support that [Sanders] is limited in her ability to interact with others and it is accommodated in the above residual functional capacity funding.  [....] Finally, the record does not support Dr. Nagarkar's opinion that [Sanders] would be sent from work four or more days per month.  As previously stated, [Sanders] was consistently and routinely able to attend her medical appointments.

(*Id.*)

After adopting the light-work RFC, the ALJ found that Sanders was "capable of performing [her] past relevant work as a housekeeping cleaner." (*Id.*, PageID.73.) He also determined that "there [were] other jobs existing in the national economy that she [was] able to perform." (*Id.*)  He therefore concluded that Sanders was "not disabled" and not entitled to benefits. (*Id.*, PageID.75.)

Sanders appealed the ALJ's ruling to the Appeals Council, and that council denied review. (*See* ECF No. 10-2, PageID.47-49.)

## C

On November 7, 2019, Sanders filed this action seeking judicial review of the administrative decision denying her applications for benefits. (*See* Compl., ECF No. 1.)  Sanders and the Commissioner then filed cross-motions for summary judgment. (*See* Sanders Mot., ECF No. 12; Comm'r Mot., ECF No. 15.)

6

In Sanders' motion, she argued that the ALJ "failed to [properly] weigh the opinion evidence … rendering his RFC unsupported by substantial evidence." (Sanders Mot., ECF No. 12, PageID.1079.)  More specifically, she asserted that the ALJ violated what is commonly referred to as the "treating physician rule" when the ALJ "failed to provide sufficient reasons for the rejection of Dr. Nagarkar's opinions."[1] (*Id.*, PageID.1082.)  Sanders further insisted that the reasons the ALJ provided for not assigning controlling weight Dr. Nagarkar's opinions were "not supported by substantial evidence." (*Id.*)

The assigned Magistrate Judge issued a report and recommendation on the parties' cross-motions on February 19, 2021. (See R&R, ECF No. 17.)  The Magistrate Judge recommended granting the Commissioner's motion and denying Sanders' motion.  (*See id.*)  The Magistrate Judge concluded that "the ALJ thoroughly discussed" Dr. Nagarkar's assessments in his written decision and sufficiently "explain[ed] his reasoning for discounting the weight given to [Dr. Nagarkar's] opinions." (*Id.*, PageID.1145, 1149.)  She therefore recommended that "Sanders' claim of error [with respect to Dr. Nagarkar's opinions] should be rejected."  (*Id.*, PageID.1149.)

---

[1] The Court discusses the "treating physician rule" at length below.

7

## II

### A

Sanders filed her Objections to the R&R on March 5, 2021. (*See* Objections, ECF No. 18.)  In the Objections, Sanders argues that the ALJ failed to comply with the treating physician rule when he did not provide controlling weight to Dr. Nagarkar's November 2016 and March 2018 Assessments. (*See id.*, PageID.1158.) More specifically, she insists that the ALJ failed "to provide good reasons supported by the evidence for rejecting Dr. Nagarkar's opinions." (*Id.*, PageID.1161.)  The Court agrees.  It will therefore remand this action for further administrative proceedings.

### B

Under the "treating physician rule" that applies here,[2] the opinion of an applicant's treating physician must be given "controlling weight" if "(1) the opinion

---

[2] "The treating physician rule has been abrogated as to claims filed on or after March 27, 2017." *Dalecke v. Berryhill*, 2019 WL 3046559, at *5 n.7 (E.D. Mich. June 24, 2019) (quoting 20 U.S.C. § 404.1520(c)), report and recommendation adopted at 2019 WL 3035523 (E.D. Mich. July 10, 2019).  As the Commissioner acknowledges (*see* Comm'r Mot., ECF No. 15, PageID.1107-1108), the treating physician rule described in text above applies here because Sanders filed her applications for benefits in 2016. *See*, *e.g.*, *Thaxton v. Comm'r of Soc. Sec.*, 815 F. App'x 955, 959 (6th Cir. 2020) (noting that "the 'treating physician' rule … applies to claims filed before March 27, 2017"); *Dalecke*, 2019 WL 3046559, at *5 n.7 ("Because [plaintiff's] application was filed before March 27, 2017, the treating physician rule applies") (citing 20 C.F.R. § 404.1527, "Evaluating opinion evidence for claims filed before March 27, 2017").

'is well-supported by medically acceptable clinical laboratory diagnostic techniques;' and (2) the opinion 'is not inconsistent with the other substantial evidence in the case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)). If an ALJ does not provide controlling weight to a treating-physician's opinion, the ALJ is required to "provide 'good reasons' for discounting the weight given to [that] opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)). "These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (citations and quotations omitted). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Finally, "even if the treating physician's opinion is not given controlling weight, there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (internal punctuation omitted).

## C

The ALJ did not comply with the treating physician rule with respect to either the November 2016 Assessment or the March 2018 Assessment. The Court begins

with the ALJ's treatment of Dr. Nagarkar's November 2016 Assessment.    As explained above, the ALJ explained why he provided only "limited weight" to the November 2016 Assessment in just one sentence: "Dr. Nagakar provided little-to-no narrative support, based [her opinions] on [a] relatively minimal and conservative treatment history for [Sanders'] mental impairments, and [she] had been seeing [Sanders] for 6 months." (ALJ's Decision, ECF No. 10-2, PageID.72.)

The ALJ's explanation for discounting the November 2016 Assessment is insufficient for several reasons.  First, the fact that Dr. Nagarkar had been treating Sanders for "6 months" says very little about the treating relationship between Dr. Nagarkar and Sanders and/or about the quality of Dr. Nagarkar's opinions.  In fact, Sanders saw Dr. Nagarkar at least five times during that six-month period in question (*see* ECF No. 10-11, PageID. 504-508; ECF No. 10-14, PageID.651-657), and those interactions suggest there was a meaningful and developed treatment relationship. At nearly every appointment, Dr. Nagarkar either started Sanders on a new medication, discontinued the use of a previously-prescribed medication, changed the dosage of one of her medications, or did all of these things. (*See id.*)  That track record suggests that Dr. Nagarkar was quite engaged with Sanders' treatment and that she was continually monitoring, assessing, and adjusting Sanders' treatment plan and medications when appropriate.  Second, the ALJ failed to explain what he meant when he characterized the relationship between Sanders and Dr. Nagarkar as

involving a "relatively minimal and conservative treatment history." (ALJ's Decision, ECF No. 10-2, PageID.72.)  Moreover, that description seems wrong. There is no reason to believe, on this record, that Dr. Nagarkar's repeated adjusting and changing of Sanders' medications on a monthly basis was either "minimal" or "conservative."  Finally, the ALJ said that Dr. Nagarkar did not provide sufficient narrative support for her opinions, but the November 2016 Assessment did include some narrative descriptions of Sanders' impairments and condition.  For all of these reasons, the ALJ did not provide sufficiently "good reasons" that are supported by the record for discounting the November 2016 Assessment.

The ALJ also did not provide sufficient reasons, supported by the record, for not giving the March 2018 Assessment controlling weight.  The ALJ assigned only "some weight" to the March 2018 Assessment because, among other things, Sanders' "interactions with her physicians, which were always described as appropriate, do not support that she is completely unable to engage with coworkers, supervisors, or the public." (ALJ's Decision, ECF No. 10-2, PageID.72.)  But the fact that a patient may be able to interact *with her doctors*, says very little, if anything, about that individual's ability to function *in the workplace*.  As one court has explained when concluding that an ALJ "harmfully erred" when the ALJ rejected the opinion of an applicant's treating physicians:

11

> The fact that a claimant manages to be cooperative with her healthcare providers does not contradict those providers' opinions that the claimant is severely limited in her ability to interact with coworkers, supervisors, or the general public. Plaintiff's healthcare providers are professionals trained to deal with mentally and physically ill or disabled patients. Furthermore, a medical treatment relationship is not like the relationship a worker has with her coworkers, supervisors, or the general public. The goals and nature of interacting with healthcare providers is different. The Social Security Administration's regulation concerning evidence of functioning in supportive situations is instructive here: "Your ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate your ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. 404, Subpart P, App'x 1, § 12.00(C)(6)(b) (2016). Interactions with treatment providers are likely to be "less demanding or more supportive than typical work settings" and thus do not demonstrate an ability to work with coworkers, supervisors, or the general public in a work setting. *Id.*

*Tina R. v. Comm'r of Soc. Sec.*, 2019 WL 1417301, at *1 (W.D. Wash. Mar. 29, 2019) (remanding for further administrative proceedings and instructing ALJ on remand to reevaluate the opinions of the plaintiff's treating physicians). *See also Daugherty v. Comm'r of Soc. Sec.*, 2017 WL 3987867, at *8 (S.D. Ohio July 20, 2017) (noting that "relationships with [] medical providers[] are not equivalent to the type of social interactions that [p]laintiff would encounter in the workplace"), report and recommendation adopted at 2017 WL 3965326 (S.D. Ohio Sept. 8, 2017). For all of these same reasons, the Court concludes that Sanders' ability to interact

with her treating physicians is not a "good reason" to discount the March 2018 Assessment.

The ALJ also said that Dr. Nagarkar's statement in the March 2018 Assessment that Sanders would miss work four or days per month was "not support[ed]" by the record because Sanders "consistently and routinely [was] able to attend her medical appointments."(ALJ's Decision, ECF No. 10-2, PageID.72.) But, again, the fact that Sanders was able to attend medical appointments, so she could seek treatment from doctors, does not support the conclusion that Sanders could regularly attend work, where she would have to interact with supervisors, coworkers, and the public, on a repeated basis.  Moreover, Sanders has identified evidence in the record that her agoraphobia *did* prevent her from attending medical appointments. (*See* ECF No. 10-15, PageID.723, noting that Sanders refused to attend physical therapy for a shoulder injury because "she feels uncomfortable at therapy due to her depression and anxiety").  This too is not a "good reason" for discounting the March 2018 Assessment.  Since the ALJ did not provide any other reasons for not giving controlling weight the relevant portions of the March 2018 Assessment, the ALJ did not comply with the treating physician rule with respect to that assessment.

**D**

Because the ALJ did not provide "good reasons," supported by the record, for not providing controlling weight to the November 2016 and March 2018 Assessments by Dr. Nagakar, a remand for further administrative proceedings is required under sentence four of 42 U.S.C. § 405(g).[3]  On remand, the Commissioner and/or the ALJ shall reevaluate the opinions of Dr. Nagakar, and, if necessary in light of that reevaluation, reassess Sanders' RFC and the decision to deny her benefits.  If the Commissioner and/or ALJ decide that Dr. Nagarkar's opinions are still not entitled to controlling weight, the Commissioner and/or ALJ shall fully explain the bases for that decision.

**III**

For all of the reasons explained above, Sanders' Objections to the R&R (ECF No. 18) are **SUSTAINED IN PART**.  Sanders' motion for summary judgment (ECF No. 12) is **GRANTED IN PART** to the extent that it seeks a remand and the Commissioner's motion for summary judgment (ECF No. 15) is **DENIED**.

---

[3] Because the Court is remanding this matter for further administrative proceedings, it need not address Sanders' second objection that the ALJ should have developed the record further with respect to her physical impairments. (*See* Objections, ECF No. 18, PageID.1161-1164.)  On remand, Sanders will have an opportunity to present additional medical opinions in support of her physical limitations.

This action is **REMANDED** to the Commissioner for further administrative

proceedings consistent with this order.

**IT IS SO ORDERED**.

                            s/Matthew F. Leitman

                            MATTHEW F. LEITMAN

                            UNITED STATES DISTRICT JUDGE

Dated:  March 19, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 19, 2021, by electronic means and/or ordinary mail.

                            s/Holly A. Monda

                            Case Manager

                            (810) 341-9764